### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHNATHAN WINSTON**, | |
| Plaintiff, | |
| v. | Case No. 23-cv-3832 (CRC) |
| **DISTRICT OF COLUMBIA**, et al., | |
| Defendants. | |

### MEMORANDUM OPINION

Plaintiff Johnathan Winston was incarcerated as a pre-trial detainee at the District of

Columbia Central Detention Facility from November 2019 until December 2022. During that

time, he claims to have experienced a range of unsatisfactory conditions of confinement, from

cold cell temperatures to unsanitary food to broken furniture. Winston brings constitutional and

common-law tort claims for damages arising out of those conditions against the District of

Columbia and Deputy Warden Kathleen Landerkin, in her official capacity. Although the jail

conditions he experienced may have been unpleasant, Winston does not link them to any District

policy. Nor do they rise to constitutional proportions. The Court will therefore dismiss

Winston's constitutional claims. As for Winston's common-law tort claims, he did not provide

the District with timely notice of them as required under Section 12–309 of the D.C. Code.

Accordingly, the Court will grant summary judgment to the District on all Winston's tort claims.

I.    **Background**

   A.    Factual Background

The Court takes the following facts from Mr. Winston's complaint as true. See Jerome

Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005). Defendants no doubt

dispute many of the allegations.

Winston was arrested in November 2019 and detained at the District of Columbia Central Detention Facility ("CDF") until early December 2022.  Compl., ECF No. 1-2, ¶¶ 1, 6.  He was charged with first-degree murder while armed, conspiracy, and "other serious crimes," for which he was ultimately acquitted.  Id. ¶ 16.  Winston alleges that his conditions of pretrial detention while at CDF fell below minimum standards of care in several respects.

First, in April and May 2020, the jail allegedly denied medical treatment for Winston's pneumonia, leading him to suffer fear and anxiety and "permanent injury in that he is always congested and produces excess mucous." Id. ¶ 9.  Then, in June 2022, CDF Deputy Warden Kathleen Landerkin ordered Winston to be moved "into a cell with a broken bed and table," which caused Winston a laceration.  Id. ¶ 10.  The cell was also "very cold and not usable," so Winston "could not keep warm or sleep." Id.  After Winston and his family members made repeated complaints, a maintenance person visited his cell and advised that it "was uninhabitable and could not be fixed for 48 hours." Id. ¶ 11.  Nevertheless, Deputy Warden Landerkin ordered guards to keep Winston in his cell unless he opted to enter solitary confinement instead.  Id.

Winston then complained that he could not breathe in his cell, so he was examined by a physician, Dr. Alston, who advised moving Winston to another cell.  Id. ¶ 12.  Landerkin, however, continued to insist that Winston remain in the same cell or else be placed in solitary confinement.  Id.  When Winston refused to return to his cell, corrections officers allegedly sprayed mace all over his body, including his genitals.  Id.  The next day, the jail moved Winston to a recently repaired cell, which he claims was full of smoke and particles.  Id. ¶ 13.  Although Winston again complained, he was not moved.  Id.  Winston claims the conditions in his new cell exacerbated his asthma and the after-effects of pneumonia, from which he had recently recovered.  Id.

Moreover, throughout his time at CDF, Winston says he was served inedible rations—including food served cold and sometimes with bugs and urine.  Id. ¶ 14.  On other occasions, he claims that he received the same meal for days on end, or corrections officers withheld food from him altogether.  Id.  Corrections officers also allegedly deprived Winston of recreation time and showers and confiscated his eyeglasses, pictures, and mail, all without justification.  Id.

On March 17, 2022, jail authorities moved Winston into solitary confinement in a different cell block "with no lawful justification."  Id. ¶¶ 8, 15.[1]  Winston further claims that Landerkin retaliated against him for complaining about jail conditions by ordering staff to take away his personal items, eyeglasses, and medication.  Id. ¶ 16.  Losing these items allegedly impaired Winston's ability to prepare for his trial, and although he was ultimately acquitted, he suffered fear, anxiety and emotional distress as a result.  Id.

B.  Procedural History

In November 2023, Winston filed suit against the District of Columbia in the D.C. Superior Court.  Id. at 1.  The District removed the case.  Notice of Removal, ECF No. 1, at 2–4. Winston sues under 42 U.S.C. § 1983 alleging that the District's treatment of him violated the Fourth, Fifth, and Eighth Amendments.  Compl. ¶¶ 27–33.  He also brings a First Amendment claim alleging that the District retaliated against him for complaining about his conditions of confinement and a Sixth Amendment claim based on the jail's alleged deprivation of his access to courts and right to counsel.  Compl. ¶¶ 34–39, ¶¶ 40–44.  Lastly, he brings state-law tort

---

[1] Winston also makes a confused allegation that prison authorities "refused to move him to any block other than Northwest 2, a block known to Mr. Winston [and corrections officials] to house family members of one of the victims" of the crime with which he was charged.  Id. ¶ 15. From this, the Court cannot discern whether Winston means to allege that he was moved into a cell block with these individuals or whether this was the only alternative to solitary confinement offered to him.

claims asserting negligence, and both intentional and negligent infliction of emotional distress, claiming that the District of Columbia is liable for the actions of the jail's correctional officers under respondeat superior.  Compl. ¶¶ 17–26, 45–58.

The District moved to dismiss Winston's complaint under Rule 12(b)(6).  To consider a letter exhibit attached to the motion to dismiss relevant to Winston's state-law tort claims, the Court sua sponte ordered the partial conversion of the motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 56 insofar as the motion related to Counts I, V, VI, and VII.  Order Partially Converting Defendants' Motion to Dismiss, ECF No. 10; see Fed R. Civ. P. 12(d).  Although the conversion order gave both parties the opportunity to present further evidence on this issue, neither responded.

The Court will now grant the District's motion, dismiss Winston's constitutional claims, and grant summary judgment to the District on his common-law tort claims.

## II.    Legal Standards

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  A court "must treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up).  Although a complaint need not provide "detailed factual allegations" to withstand a 12(b)(6) motion, it must offer "more than labels and conclusions."  Twombly, 550 U.S. at 555.

To prevail on a motion for summary judgment, the moving party bears the burden of demonstrating "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895–96 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the outcome of the litigation. Holcomb, 433 F.3d at 895; Liberty Lobby, 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.

### III. Analysis

Winston's constitutional claims do not get off the ground because he has failed to allege municipal liability as required under to bring suit under 42 U.S.C. § 1983. Even if the Court were to consider his claims on the merits, however, they uniformly fail. And his state-law tort claims may not proceed, either, because he did not provide the District timely notice of them under D.C. Code Section 12–309.

### A. Municipal Liability

The District first moves to dismiss Winston's constitutional claims on the ground that he has not established the District's municipal liability. Mot. for Partial Summ. J. at 7–11.[2] The Court agrees.

---

[2] Winston has brought his claims solely against the District of Columbia and Deputy Warden Landerkin in her official capacity, and "an official-capacity suit against an individual is 'equivalent to a suit against the municipality itself.'" Pollard v. District of Columbia, 191 F. Supp. 3d 58, 79 (D.D.C. 2016), aff'd, 698 F. App'x 616 (D.C. Cir. 2017) (quoting Atchinson v. District of Columbia, 73 F.3d 418, 424 (D.C. Cir. 1996)). "Thus, in effect," Winston has brought his claims "solely against the District" and must establish municipal liability. Pollard, 191 F. Supp. 3d at 79.

Courts engage in a two-part inquiry to determine whether a plaintiff has stated a claim for municipal liability.  Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing Collins v. City of Harker Heights, 503 U.S. 115, 124 (1992)).  First, the court evaluates "whether the complaint states a claim for a predicate constitutional violation."  Id.  At this step, "[a]ll that is being established . . . is that there is some constitutional harm suffered by the plaintiff, not whether the municipality is liable for that harm."  Baker, 326 F.3d at 1306.  Second, the court determines "whether the complaint states a claim that a custom or policy of the municipality caused the violation."  Id. (citing Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978)).  To do so, the complaint must "allege[ ] an 'affirmative link'" between the policy and the incident "such that a municipal policy was the moving force behind the constitutional violation."  Baker, 326 F.3d at 1306 (citation omitted).

As to the second element, a municipality may be liable under Section 1983 if there has been: (1) "the explicit setting of a policy by the government that violates the Constitution;" (2) "the action of a policy maker within the government;" (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom;'" or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations[.]"  Baker, 326 F.3d at 1306 (citations omitted).  Here, the District argues that Winston fails to allege that the challenged treatment resulted from either a municipal policy or custom or deliberate indifference on the part of the District.  Mot. for Partial Summ. J. at 7–11.  The Court agrees.

_____

Winston offers no facts indicating that his allegedly unconstitutional conditions of confinement—the jail's "serving disgusting and inedible food, placing Plaintiff in segregation without justification, placing Plaintiff in an uninhabitable cell and otherwise making Plaintiff fear for his life and health," Compl. ¶ 30—arose from a CDF custom or policy.  To be sure, Winston includes the bare allegations that "[t]he continuing policy and practices of the Defendants include the above stated acts," id., and that "[t]he treatment complained of above has become a policy at CDF."  Id. ¶ 31.  But "these contentions are merely 'legal conclusions cast in the form of factual allegations.'"  Grissom v. District of Columbia, 853 F. Supp. 2d 118, 123 (D.D.C. 2012) (citation omitted).  A complaint must offer more than these "keywords" and instead "identify supporting facts."  Id.; see Thomas v. District of Columbia, No. 21-cv-584 (CRC), 2021 WL 5769443, at *2 (D.D.C. Dec. 6, 2021).  Here, Winston offers no facts indicating that the treatment he challenges resulted from a CDF policy or custom.

Winston "does lay out facts relating to" each specific incident "that forms the basis of [his] case."  Thomas, 2021 WL 5769443, at *2.  For instance, he notes that he was placed in a cold cell in which he could not breathe, Compl. ¶¶ 10–12, and moved to a segregation block, id. ¶ 15.  But nowhere does Winston "name or identify" the policy, practice, or custom he challenges, "nor does [he] cite any incident other than the events alleged in [his] complaint."  Trimble v. District of Columbia, 779 F. Supp. 2d 54, 59 (D.D.C. 2011).  At most, he is "merely speculating that an unidentified policy and uncorroborated practice or custom exists without providing any factual heft to support the allegation[.]"  Id.  A long line of cases in this district have found similarly sparse allegations of a policy or custom inadequate to state a claim.  Thomas, 2021 WL 5769443, at *2 (collecting cases).  And although Winston says he was served inedible food "[t]hroughout his time at CDF," he never links the unsatisfactory meals to a

broader jail policy.  Compl. ¶ 14.  His claim, instead, appears to consist of several discrete, undated complaints—e.g., food was "served to him cold" or occasionally with "bugs and urine." Id.

For the same reasons, Winston fails to allege municipal liability predicated on the District's deliberate indifference.  "Deliberate indifference is an objective standard that means that when a city is 'faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction.'"  Tyson v. District of Columbia, No. 20-cv-1450 (RC), 2021 WL 4860685, at *12 (D.D.C. Oct. 19, 2021) (citation omitted).  "It is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'"  Id. (citation omitted).

As just noted, Winston identifies several discrete actions that he believes violated his constitutional rights.  These complaints are not part of a pattern—in fact, each incident is different in nature, ranging from the provision of unsanitary food to cold cell temperatures. Winston's reliance on each "single incident is clearly insufficient to establish the existence of a policy amounting to 'deliberate indifference.'"  Byrd v. District of Columbia, 297 F. Supp. 2d 136, 139 (D.D.C. 2003), aff'd sub nom. Byrd v. Gainer, No. 03-7196, 2004 WL 885228 (D.C. Cir. Apr. 26, 2004).  And as already noted, Winston offers no additional facts indicating that these disparate incidents resulted from a jail custom or policy.

Because Winston has not plausibly alleged any basis for the District's municipal liability, his constitutional claims must be dismissed.  Even if he had, for the reasons explained below he has not plausibly alleged any predicate constitutional violation, either.

B.  Eighth Amendment Claim (Count Two)

Winston alleges that the jail's treatment of him while he was a pretrial detainee at CDF violated the Eighth Amendment.  Compl. ¶¶ 27–33.  In his opposition, however, he appears to concede that the Fifth Amendment, not the Eighth Amendment, applies to pretrial detainees' rights.  See Opp'n at 2; Mot. for Partial Summ. J. at 12.  With good reason.  "The Eighth Amendment prohibits the government from inflicting cruel and unusual punishment on jail inmates, which includes a jail official's deliberate indifference to a substantial risk of serious harm to an inmate."  Hardy v. District of Columbia, 601 F. Supp. 2d 182, 187 (D.D.C. 2009) (citations omitted) (cleaned up).  But the Eighth Amendment "does not apply to pretrial detainees," so Winston "had no Eighth Amendment rights that could have been violated" while he was detained.  Id. (citations omitted).  Accordingly, Winston cannot state an Eighth Amendment claim on the merits.

C.  Fourth Amendment Claim (Count Two)

Winston next brings a Fourth Amendment claim.  Compl. ¶¶ 27–33.  He does not respond to the District's argument that he has failed to state such a claim, apparently conceding it.  See Opp'n.

Even if Winston had not conceded this claim, it cannot succeed on the merits.  The District argues that none of Plaintiff's allegations "amount to a search or seizure, whether of Plaintiff or of his property."  Mot. for Partial Summ. J. at 12.  Winston did allege, however, that corrections officers "deprived [him] of his eyeglasses, as well as pictures and mail."  Compl. ¶ 14.  Nevertheless, he cannot state a claim because the Fourth Amendment is inapplicable to a search or seizure of an inmate's personal property.  See Hudson v. Palmer, 468 U.S. 517, 529–30 (1984); see also Leyva v. Neven, No. 10-cv-84 (KJD), 2010 WL 4604662, at *2 (D. Nev. Nov. 5,

2010).  In <u>Hudson v. Palmer</u>, the Supreme Court held that inmates do not "have a reasonable expectation of privacy enabling [them] to invoke the protections of the Fourth Amendment." 468 U.S. at 530.  The Supreme Court expressly noted that its holding "appl[ies] with controlling force to seizures" of inmate's personal property, because "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests."  <u>Id.</u> at 528 n.8.

Accordingly, Winston cannot state a Fourth Amendment claim.

D.  <u>Sixth Amendment Claim (Count Four)</u>

Winston further contends that his treatment in jail denied him access to the courts and counsel in violation of the Sixth Amendment.  Compl. ¶¶ 40–44.  Once again, he does not respond to the District's argument that he has not plausibly stated such a claim.  <u>See</u> Opp'n.

In any event, his Sixth Amendment claim fails.  Although Winston broadly asserts that Landerkin and the District's actions violated "his rights to access to the courts and his right to counsel," Compl. ¶ 41, most of his allegations have nothing to do with either.  Winston makes no allegations at all about any jail interference with his access to counsel while he was a pretrial detainee.  <u>See</u> Compl.  The only allegation that is even remotely relevant to an access-to-courts claims is that the jail's deprivation of his "personal items, eyeglasses and medication" impaired "Mr. Winston's ability to prepare for [his] multiple co-defendant trial[.]"  <u>Id.</u> at ¶ 16.  But Winston alleges no specific facts indicating that the deprivation of unidentified "personal items," eyeglasses or medication prevented him from meeting with counsel or preparing for trial.  <u>Id.</u> Because Winston offers only one conclusory allegation, which is  "not entitled to the assumption of truth," rather than pleading any specific facts to support his Sixth Amendment claim, his claim

fails. <u>Webuild S.p.A. v. Argentine Republic</u>, No. 21-2464 (RBW), __ F. Supp. 3d __, __, 2024 WL 4828182, at *3 (D.D.C. Nov. 19, 2024).[3]

    E. <u>First Amendment Claim (Count Three)</u>

    Winston's First Amendment retaliation claim fares no better. "To state a claim for First Amendment retaliation, a plaintiff must allege that: '(1) he or she engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against him or her." <u>Black Lives Matter D.C. v. Trump</u>, 544 F. Supp. 3d 15, 46 (D.D.C. 2021) (quoting <u>Aref v. Lynch</u>, 833 F.3d 242, 258 (D.C. Cir. 2016), <u>aff'd sub nom.</u> <u>Buchanan v. Barr</u>, 71 F.4th 1003 (D.C. Cir. 2023)).

    Here, even assuming that that "placing Plaintiff in segregation, keeping him in an unhabitable cell, and serving him disgusting and inedible food," Compl. ¶ 36., qualified as retaliatory action, Winston has not alleged any protected conduct. He includes a passing reference to "filing grievances" and "reporting the conduct complained of," <u>id.</u> ¶ 35, and asserts that he was the "victim of retaliation for complaining about the conditions" he experienced, <u>id.</u> ¶ 16. But he includes no specifics about what, when, or to whom he reported. Winston thus

---

[3] The District also argues that the Winston's claim should be dismissed because even if he has pled a Sixth Amendment violation, he was subsequently acquitted and consequently has alleged no actual injury as required under <u>Lewis v. Casey</u>, 518 U.S. 343, 349–51 (1996). Mot. for Partial Summ. J. at 19–20. While the District's argument has some force, the Court observes that at least one Court of Appeals has declined to apply <u>Lewis</u>'s actual-injury requirement, which arose in the context of a state's obligation to provide law libraries and legal assistance programs, to claimed interference with an accused person's ability to consult counsel for his defense. <u>Benjamin v. Fraser</u>, 264 F.3d 175, 185–87 (2d Cir. 2001). Because Winston has not plausibly alleged a Sixth Amendment violation, the Court need not decide whether <u>Lewis</u> applies to his claim.

offers no facts indicating either that he engaged in protected conduct or that the jail's treatment of him resulted from such conduct. His allegations therefore do not "nudge his claim across the line from conceivable to plausible," Townsend v. United States, 236 F. Supp. 3d 280, 296 (D.D.C. 2017) (cleaned up) (quoting Twombly, 550 U.S. at 570).

    F.  Fifth Amendment Claim (Count Two)

Winston next alleges that his conditions of confinement violated his Fifth Amendment rights. Compl. ¶¶ 27–33. Constitutional challenges to conditions of confinement most often arise in the Eighth Amendment context, which as already noted, does not apply here because Winston was a pre-trial detainee. Johnson v. District of Columbia, No. 17-cv-185 (CRC), 2019 WL 689777, at *2 (D.D.C. Feb. 19, 2019). However, "courts have consistently held that the right belonging to pretrial detainees under the Fifth Amendment is at least as great as the analogous Eighth Amendment right," so the Eighth Amendment "deliberate indifference" standard is instructive here. Id. (citation omitted). Thus, to establish that Winston's Fifth Amendment rights were violated, he must allege that jail officials knew that he faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." Pollard, 191 F. Supp. 3d at 78 (citing Farmer v. Brennan, 511 U.S. 825, 847 (1996)). The alleged deprivation must be "sufficiently serious," as "[n]ot just any unpleasant condition" rises to the level of a constitutional violation. Smith-Bey v. CCA/CTF, 703 F. Supp. 2d 1, 8 (D.D.C. 2010).[4]

---

[4] Some courts in this District evaluate pretrial detainees' deliberate indifference claims under an objective rather than subjective standard. See Bah v. D.C., No. 23-cv-1248 (JDB), 2024 WL 983329, at *5 (D.D.C. Mar. 7, 2024). The Court need not decide which standard applies because under either standard, Winston has not alleged deliberate indifference.

First, Winston has not alleged a deprivation or risk to his health or safety of constitutional proportions.  Although the conditions Winston describes—a stay in a cold cell with a broken bed and table for a few days,[5] another stint in a cell with smoke particles, being served the same meal repeatedly or cold food, placement in solitary confinement for some unspecified period of time, and the withholding of recreation time and showers—were doubtless unpleasant, those allegations "do not rise to the level of a sufficiently serious deprivation."  Id. at 8.

Winston's allegation that jail officials deprived him of his eyeglasses, pictures, and mail does not state a claim, either, as "intentional deprivations do not violate [the Due Process Clause] provided, of course, that adequate state post-deprivation remedies are available."  Hudson, 468 U.S. at 533.  As the District observes, Winston could seek recompense through personal property torts.  Mot. for Partial Summ. J. at 17; Restatement (Second) of Torts § 217 (Am. L. Inst. 1965); see Niederklopfer v. Ferriter, No. 07-cv-24, 2008 WL 5416390, at *1 (D. Mont. May 21, 2008) (holding as to plaintiff whose property was taken by jail guards that "because state law provides [Plaintiff] with the opportunity to be compensated for property loss, he has not been deprived of property without due process of law.").

Winston also alleges that he was placed in solitary confinement "without justification."  Compl. ¶¶ 8, 15.  But the Court "need not accept" this "legal conclusion[]."  Salcedo v. Rossotti, 636 F. Supp. 2d 35, 39 (D.D.C. 2009) (citing Kowal v. MCI Commc'ns Corp., 16 F.3d 1271,

---

[5] Winston also alleges, in passing, that he was sprayed with mace when he refused to return to his cell.  Compl. ¶ 12.  But he does not offer facts indicating this was an unreasonable response to his refusal to obey orders, especially given the "deference and flexibility to state officials trying to manage a volatile environment" owed to prison administrators.  Hatch v. District of Columbia, 184 F.3d 846, 849 (D.C. Cir. 1999) (citation omitted); see Mot. for Partial Summ. J. at 15.

1276 (D.C. Cir. 1994). Nor does Winston offer any additional facts indicating that he was placed in solitary confinement without penological justification.[6]

The Court does view with some concern Winston's allegations that (1) his food had "sometimes had bugs and urine in it;" and (2) corrections officers "withheld food" from him on occasions. Compl. ¶ 14. Jail authorities are required to "provide humane conditions of confinement" and to "ensure that inmates receive adequate food." Smith-Bey, 703 F. Supp. 2d at 8 (citing Farmer, 511 U.S. at 832). Winston, however, does not specify how often he was served unsanitary food or no food at all. Although he claims he received "inedible food" "[t]hroughout his time at CDF," he does not specify any date or dates on which this occurred. Compl. ¶ 14; see Opp'n at 3. Since he includes no information as to frequency, the Court is unable to conclude that he has alleged more than "[o]ccasional incidents" of unsatisfactory food. Smith-Bey, 703 F. Supp. 2d at 8. Accordingly, he has not stated a constitutional violation. See id.

Second, Winston fails to allege that jail officials were deliberately indifferent to any medical need or risk to his health or safety. To the contrary, it appears that when he complained to jail officials about his conditions of confinement, they took steps to remedy the issues. For instance, he acknowledges that "DC DOC employees dispatched a maintenance person" to address the habitability issues in his cell, Compl. ¶ 11, that he "was examined by Dr. Alston" when he complained that he couldn't breathe, id. ¶ 12, and that he was moved to another cell shortly after complaining, id. ¶ 13. These appear to be reasonable attempts to address Winston's complaints. And even jail officials who are subjectively aware of risks to inmate health and

---

[6] As discussed, it is unclear whether Winston means to allege that he was placed in a cell block that "house[d] family members of one of the victims [of the crime] for which Mr. Winston was awaiting trial." Compl. ¶ 15. Even if he does, absent any allegations about his level of contact with those individuals, the Court cannot conclude that his placement in a cell block with them, standing alone, presented a risk to his safety.

safety "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Richardson v. District of Columbia, 322 F. Supp. 3d 175, 183 (D.D.C. 2018) (citation omitted).

Winston further contends that he was "denied medical care for his pneumonia." Compl. ¶ 9. But he provides no more detail than that—he does not even allege that he informed the District that he was suffering from pneumonia, for instance, or that he requested any specific medical treatment that was denied. Similarly, as to his claims based on inedible food, Winston does not allege that he complained about this to jail officials, either. And "[t]he District cannot be deliberately indifferent to an allegedly injurious practice of which the Appellants fail to allege the District had any knowledge." Pollard, 698 F. App'x at 621.

Winston therefore fails to state a Fifth Amendment claim on the merits.

G. State Law Claims (Counts One, Five, Six, and Seven)[7]

Lastly, Winston brings state-law tort claims asserting negligence and intentional and negligent infliction of emotional distress. Compl. ¶¶ 17–26, 45–58. The District argues that Winston failed to provide timely notice of his claims under D.C. Code § 12–309 and attached Winston's notice, dated May 7, 2023, to its motion to dismiss. Mot. for Partial Summ. J. at 20–21; id., Ex. 1 ("Section 12–309 Notice"). In order to take account of this notice, which was not properly part of the record on a Rule 12(b)(6) motion to dismiss because it was neither attached to, nor referenced in, nor necessarily relied upon by the complaint, the Court notified the parties that it would *sua sponte* convert the motion to dismiss into a motion for partial summary

---

[7] The Court will refer to Plaintiff's intentional infliction of emotional distress claim as Count Five rather than Count Four, Plaintiff's negligent infliction of emotional distress claim as Count Six rather than Count Seven, and Plaintiff's respondeat superior claim as Count Seven rather than Count Eleven, because the claims are misnumbered in the Complaint.

judgment on Counts One, Five, Six and Seven.  Order Partially Converting Defendants' Motion to Dismiss, ECF No. 10.  The Court provided the plaintiff fourteen days to file any response and the District seven days thereafter to file any reply.  Id.  Neither party filed additional briefing.

In any event, Section 12–309 of the D.C. Code requires that a plaintiff seeking damages against the District of Columbia, within six months of the injury, give notice in writing "of the approximate time, place, cause, and circumstances of the injury or damage."  D.C. Code § 12-309(a).  Compliance with Section 12–309 is a mandatory prerequisite to filing tort claims against the District of Columbia.  E.g., District of Columbia v. Dunmore, 662 A.2d 1356, 1359 (D.C. 1995); Gwinn v. District of Columbia, 434 A.2d 1376, 1378 (D.C. 1981).  Section 12–309 "is to be strictly construed because it is a departure from the common law concept of sovereign immunity."  Jones v. District of Columbia, No. 21-cv-836 (RC), 2021 WL 5206207, at *13 (D.D.C. Nov. 9, 2021).

Winston filed his pre-suit notice with the D.C. Office of Risk Management on May 7, 2023.  Section 12–309 Notice.  To the extent he includes dates, the incidents giving rise to his claims are alleged to have taken place on: April and May of 2020; March 17, 2022; June 8, 2022. Compl. ¶¶ 9, 10, 15.  His notice was therefore untimely as to all these claims.  And the Court cannot conclude that he provided timely notice of any undated allegations to the District.

Winston essentially concedes the untimeliness of his notice, asking the Court instead to "look past any 12-309 notice deficiency" because "the harm here was an ongoing course of conduct that took place over a three year period" and Winston "was held in solitary confinement for much of his time in jail."  Opp'n at 5.  He thus appears to request equitable tolling of the statute.  But Section–309 "does not allow for tolling."  Harvey v. District of Columbia, 798 F.3d 1042, 1054 (D.C. Cir. 2015) (quoting Dunmore, 662 A.2d at 1360–61).  And "[t]he continuing

tort doctrine is inapplicable" to exhaustion under Section 12–309.  Farris v. District of Columbia, 257 A.3d 509, 516 n.20 (D.C. 2021).[8]

The Court will therefore grant partial summary judgment in favor of the District with respect to all common-law tort claims against it.

## IV.    Conclusion

For these reasons, the Court will grant Defendants' Motion for Partial Summary Judgment and Motion to Dismiss, dismiss Winston's constitutional claims, and grant summary judgment to the District on his tort claims.  A separate Order accompanies this opinion.


_____
CHRISTOPHER R. COOPER
United States District Judge

Date: March 11, 2025

---

[8] The only possible allegations as to which Winston's notice may have been timely are those related to the prison's provision of inedible food, which he says occurred "throughout his time at CDF," assuming that some unsatisfactory meals continued until his release in December 2022.  Compl. ¶ 14.  But those claims, as already discussed, are bare allegations lacking the factual content required to state a plausible tort claim.